IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MÓNICA E. GONZALEZ-LOPEZ, et al. **Plaintiffs** v. MUNICIPALITY OF SAN JUAN, et al. **Defendants** | **CIVIL NO.** 23-1278 (RAM) |

<u>OPINION AND ORDER</u>

RAÚL M. ARIAS-MARXUACH, District Judge

This matter comes before the Court on Defendant MAPFRE Praico Insurance Company's ("MAPFRE" or "Defendant") *Motion for Partial Dismissal and/or Summary Judgment* ("*Motion*"). (Docket No. 73). Having reviewed the parties' submissions (Docket Nos. 73; 89; 93 and 103), the Court **GRANTS** Defendant's *Motion for Partial Dismissal and/or Summary Judgment* at Docket No. 73.

## I.    BACKGROUND

This suit arises from the death of Plaintiffs Mónica E. Gonzalez-Lopez's and José L. Rodríguez-Sánchez's (collectively, "Plaintiffs") son, Christian José Rodríguez-González (Rodríguez), who was shot and killed during a police chase carried out by Defendants Officer Alberto Robles-Concepción ("Robles") and Officer Emanual Ramos-Pabón ("Ramos") on July 15, 2022. (Docket

No. 52 ¶ 15). Plaintiffs allege that their son's death was preventable and assert that their son and his survivors suffered significantly as a result. Id. ¶¶ 15-16.

Plaintiffs filed suit on May 30, 2023, followed by an *Amended Complaint* on September 18, 2024. (Docket Nos. 1 and 52). They bring claims under 42 U.S.C. § 1983 and Puerto Rico law, asserting supplemental jurisdiction for the latter group of claims. (Docket No. 52 ¶ 4). Defendants include: (i) Ramos and Robles, the police officers involved in the shooting; (ii) Officers John Doe 1-5, police officers who allegedly arrived at the scene of the shooting and did not provide medical care to Rodríguez ("Officer Defendants"); (iii) Supervisory Officers John Doe 1 through 10 ("Supervisory Defendants"); (iv) the Municipality of San Juan ("Municipality"), who employed Robles, Ramos, the Officer Defendants and the Supervisory Defendants; (v) Miguel Romero-Lugo, mayor of San Juan; (vi) Juan J. García, Commissioner of the Municipality police; and (vii) MAPFRE, an insurance company that provided insurance to the Municipality under Policy No. 1600228003214, which allegedly provides coverage for the types of claims and damages brought in the *Amended Complaint*. Id. ¶¶ 6-8.

MAPFRE filed a *Motion for Partial Dismissal and/or Summary Judgment* on October 24, 2024. (Docket No. 73). MAPFRE sought to be dismissed from the instant case under Rules 12(b)(1), 12(b)(3), 12(b)(6), or 56(a) of the Federal Rules of Civil Procedure, arguing

that there is no subject-matter jurisdiction over MAPFRE, venue is improper, and that the plain terms of its insurance policy for the Municipality exempt it from providing coverage to the city here. Id. at 1, 21.

Plaintiffs filed their *Motion in Opposition* on November 15, 2024, noting MAPFRE's confusion on the grounds for subject-matter jurisdiction and arguing that exclusions in MAPFRE's insurance policy do not preclude coverage for Plaintiffs' claims. (Docket No. 89 at 2-5). MAPFRE filed a *Reply* on November 22, 2024, omitting its jurisdictional arguments and reiterating that the plain language of various provisions in the Municipality's insurance policy forecloses any recovery by Plaintiffs from MAPFRE. (Docket No. 93). Plaintiffs filed a *Sur-Reply* on December 13, 2024. (Docket No. 103).

## II. APPLICABLE LAW

The Court proceeds to evaluate the *Motion* under the standard for summary judgment to reach the parties' arguments on their merits and does not reach MAPFRE's Rule 12(b)(6) claim. As MAPFRE's *Motion* was styled as a motion for summary judgment, the Court does not need to provide notice to the non-movants requesting them to defend against summary judgment. The Court also does not consider MAPFRE's Rule 12(b)(1) and 12(b)(3) claims, both of which MAPFRE appears to have abandoned. (Docket Nos. 73 and 93). MAPFRE's 12(b)(1) claim is premised on the mistaken assumption that the

instant case is based on diversity jurisdiction, not federal question jurisdiction. (Docket Nos. 52 ¶ 4 and 73 at 9). Likewise, the 12(b)(3) claim is underdeveloped and reliant on the existence of diversity jurisdiction. (Docket No. 73 at 1 n.2, 6-7); <u>United States v. Zannino</u>, 895 F.2d 1, 16 (1st Cir. 1990) (arguments not developed are waived).

**A. Summary Judgment Under Rule 56(a)**

Summary judgment is proper if (i) there is no genuine dispute as to any material fact and (ii) the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence about the fact is such that "a reasonable jury could resolve the point in the favor of the non-moving party." <u>Staples v. Gerry</u>, 923 F.3d 7, 12 (1st Cir. 2019) (citing <u>Meuser v. Fed. Express Corp.</u>, 564 F.3d 507, 515 (1st Cir. 2009) (citation omitted). A fact is "material" if it "has the potential of affecting the outcome of the case." <u>Feliciano-Muñoz v. Rebarber-Ocasio</u>, 970 F.3d 53, 62 (1st Cir. 2020) (citations and internal quotation marks omitted).

The movant "bears the burden of showing the absence of a genuine issue of material fact." <u>U.S. Dep't of Agric. v. Morales-Quinones</u>, 2020 WL 1126165, at *1 (D.P.R. 2020) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)). Next, the burden shifts to the non-movant to present at least one issue of fact which is "both 'genuine' and 'material.'" <u>Id.</u> (citing <u>Griggs-Ryan</u>

v. Smith, 904 F.2d 112, 115 (1st Cir. 1990) (citation omitted)).
A non-movant must show "through submissions of evidentiary
quality, that a trialworthy issue persists." Robinson v. Town of
Marshfield, 950 F.3d 21, 24 (1st Cir. 2020) (quotation omitted).

A court "must view the evidence in the light most favorable
to the nonmoving party and give that party the benefit of any and
all reasonable inferences." Burke Rozzetti v. Ford Motor Co., 439
F.Supp. 3d 13, 18 (D.P.R. 2020) (citation omitted). Summary
judgment may be proper if the nonmoving party's case solely relies
on improbable inferences, conclusory allegations and unsupported
speculation. *See* id. (citation omitted). Furthermore, the
existence of "some alleged factual dispute between the parties
will not affect an otherwise properly supported motion for summary
judgment." Scott v. Harris, 550 U.S. 372, 379 (2007) (quotation
omitted). A court should thus review the record *in its entirety*
and refrain from making credibility determinations or weighing the
evidence. *See* Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S.
133, 150-51 (2000). A court should also "give credence to the
evidence favoring the nonmovant" as well as "uncontradicted and
unimpeached" evidence supporting the moving party, "at least to
the extent that that evidence comes from disinterested witnesses."
Id. at 151 (citation omitted).

Local Rule 56 also governs summary judgment. *See* L. Civ. R.
56. Per this Rule, a movant must provide a "separate, short, and

concise statement of material facts, set forth in numbered paragraphs" showing there is no genuine issue of material fact and supported by a record citation. Id. at 56(b). A non-movant must "admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the movant's statement of material facts." Id. at 56(c). "Unless a fact is admitted, the reply shall support each denial or qualification by a record citation." Id. A movant "replying to the opposition to a motion for summary judgment shall submit with its reply a separate, short, and concise statement of material facts, which shall be limited to any additional fact submitted by the opposing party." Id. at 56(d). Facts within a supporting or opposing statement of material facts, "if supported by record citations" per Local Rule 56, "shall be deemed admitted unless properly controverted." Id. at 56(e). The Court may disregard facts that are not sufficiently supported by citations to the record and has "no independent duty" to consider portions of the record "not specifically referenced in the parties' separate statement of facts." Id.

If a party opposing summary judgment fails to comply with the rigors that Local Rule 56(c) imposes, "a district court is free, in the exercise of its sound discretion, to accept the moving party's facts as stated." Caban Hernandez v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007). Thus, litigants ignore this

rule at their peril. *See* <u>Natal Pérez v. Oriental Bank & Trust</u>, 291 F.Supp. 3d 215, 219 (D.P.R. 2018) (citations omitted).

**B. Insurance Contracts**

The Insurance Code of Puerto Rico (the "Insurance Code") governs insurance contracts, known as policies, in Puerto Rico. *See* P.R. Laws Ann. tit. 26, §§ 101 *et seq.* Under the Insurance Code, insurance contracts are to be "construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any lawful rider, endorsement, or application attached to and made a part of the policy." <u>Id.</u> § 1125. As with any contract, clear terms in an insurance contract are enforced according to their plain meaning. However, because insurance contracts are "contracts of adhesion," their ambiguities "are liberally interpreted in favor of the insured." <u>Metlife Cap. Corp. v. Westchester Fire Ins. Co.</u>, 224 F.Supp. 2d 374, 382 (D.P.R. 2002) (citations omitted). In particular, "exclusion clauses should be interpreted restrictively in order to comply with the policy's intent, that is to provide protection to the insured." <u>Id.</u> (citation omitted); <u>Gonzalez v. John Hancock Mut. Life Ins. Co.</u>, 927 F.2d 659, 660 (1st Cir. 1991) (noting that "[a] court should confine itself to a literal application of the unambiguous terms" of an insurance contract) (internal quotations and edits omitted).

"Under Puerto Rican law, an agreement is 'clear' when it can 'be understood in one sense alone, without leaving any room for doubt, controversies or difference of interpretation[.]'" <u>Exec. Leasing Corp. v. Banco Popular de P.R.</u>*,* 48 F.3d 66, 69 (1st Cir. 1995); *see also* <u>Heirs of Ramírez v. Superior Court</u>*,* 81 P.R.R. 347, 351 (1959). With insurance contracts in particular, the District of Puerto Rico has held that although ambiguities arising from an insurance policy should "be resolved in the manner least favorable to the insurer […] this praxis **does not compel or require courts to interpret a clear, unambiguous clause that favors the insurer in a manner that would benefit the insured.**" <u>Metlife Cap. Corp.</u>, 224 F.Supp. 2d at 382 (emphasis added).

It is worth noting that "[a]mbiguity does not exist simply because the parties disagree about the proper interpretation of a policy provision." <u>Hoffman García v. Metrohealth, Inc.</u>, 246 F.Supp. 3d 527, 530 (D.P.R. 2017). Instead, ambiguity "may be found where the policy's language is susceptible to more than one rational interpretation." <u>Id.</u> (quoting <u>Clark School for Creative Learning, Inc. v. Phila. Indem. Ins. Co.</u>, 734 F.3d 51, 55 (1st Cir. 2013)). Moreover, whether an insurance policy's terms, conditions, and exclusions are clear and unambiguous is a matter of law for courts to determine. *See* <u>Marina Aguila v. Den Caribbean, Inc.</u>, 490 F.Supp. 2d 244, 249 (D.P.R.2007) (citing <u>Littlefield v. Acadia Ins. Co.</u>, 392 F.3d 1, 10 (1st Cir. 2004)).

### III. FINDINGS OF FACT

To make findings of fact, the Court reviewed Defendant's *Motion for Partial Dismissal and/or Summary Judgment* (Docket No. 73) and *Reply* (Docket No. 93), Plaintiff's *Motion in Opposition* (Docket No. 89) and *Sur-Reply* (Docket No. 103), and a copy of the Policy submitted by MAPFRE. (Docket No. 73-1).

### A. Lack of Compliance

The Court notes that Plaintiffs failed to properly address Defendant's assertions of fact as required by Rule 56(c), thus this Court may consider Defendant's proposed facts as undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2). Rule 56(e) establishes that a party opposing summary judgment "'must set forth specific facts showing that there is a genuine issue for trial.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288 (1968)).

Local Rule 56(e) provides that properly cited facts submitted by parties will be "admitted unless properly controverted." L. CV. R. 56(e). Local Rule 56 is an "anti-ferret rule" meant to "protect the district court from perusing through the summary judgment record in search of disputed material facts and prevent litigants from shifting that burden onto the court." Lopez-Hernandez v. Terumo P.R. LLC, 64 F.4th 22, 26 (1st Cir. 2023).

Accordingly, "[u]nder Local Rule 56, a district court is free, in the exercise of its sound discretion to accept the moving

party's facts as stated . . . when the statements contained in the movant's Statement of Uncontested Facts . . . are not properly controverted." Id. Importantly, "[t]he First Circuit's repeated admonition on this issue in the last few years, places the Puerto Rico federal bar on clear notice that compliance with Local Rule 56 is a mandate, not a suggestion." Ramirez-Rivera v. DeJoy, 693 F.Supp. 3d 210, 213 (D.P.R. 2023).

Plaintiffs did not comply with Local Rule 56. L. CV. R. 56(c), 56(e). The Court thus admits MAPFRE's proposed findings of fact that are uncontroverted and properly supported.

**B. Findings of Fact**

After crediting only statements of fact properly supported by the record, uncontroverted, and material to the resolution of MAPFRE's *Motion*, the Court makes the following findings of fact:[1]

i.    Background

1. MAPFRE is an insurance company that operates in Puerto Rico. (Docket No. 52 ¶ 8).

2. MAPFRE issued a commercial general liability insurance policy, number 1600228003214, for the Municipality ("Policy"). (Docket Nos. 52 ¶ 8 and 73 at 2).

3. The Policy was active from June 30, 2022, to June 30, 2023. (Docket No. 73-1 at 1).

---

[1] References to a Finding of Fact shall be cited as follows: (Fact ¶ _).

4. On July 15, 2022, Plaintiff's son, Rodríguez, was driving a motorcycle when he was ordered to stop by Robles and Ramos, both police officers for the Municipality who were in a police patrol vehicle nearby. Rodríguez fled and was pursued by Robles and Ramos. (Docket No. 52 ¶ 15, 19).

5. During the pursuit, Robles and Ramos shot at and hit Rodríguez. Rodríguez died of his injuries shortly afterwards without receiving medical care. Id. ¶ 15.

ii. <u>Policy Definitions</u>

6. The Policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (Docket No. 73-1 at 37).

7. The Policy defines "employee" as "includ[ing] a 'leased worker'. 'Employee' does not include a 'temporary worker.'" <u>Id.</u>

8. The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." <u>Id.</u> at 39.

9. The Policy defines "suit" as "a civil proceeding in which damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged." <u>Id.</u> at 40. The Policy continues to elaborate:

'Suit' includes:

a. An arbitration proceeding in which such damages are claimed and to which insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

### iii. <u>Policy Coverage and Exclusions</u>

10. "Section IV – Commercial General Liability Conditions" of the Policy's "Commercial General Liability Coverage Form," contains a section titled "Legal Action Against Us." <u>Id.</u> at 35. The provision states:

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured, and the claimant or the claimant's legal representative.

11. The Policy contains an exclusion named "Exclusion – Designated Professional Services," Form CG 21 16 04 13,

that modifies the Policy's "Commercial General Liability
Coverage" and applies to "any professional services of any
kind or nature." Id. at 50. The exclusion states:

> With respect to any professional services
> shown in the Schedule the following
> exclusion is added to Paragraph **2.
> Exclusions** of **Section I – Coverage A –
> Bodily Injury And Property Damage
> Liability** and Paragraph **2. Exclusions** of
> **Section I – Coverage B – Personal And
> Advertising Injury Liability:**
>
> This insurance does not apply to "bodily
> injury", "property damage" or "personal
> and advertising injury" due to the
> rendering of or failure to render any
> professional service.
>
> This exclusion applies even if the claims
> against any insured allege negligence or
> other wrongdoing in the supervision,
> hiring, employment, training or
> monitoring of others by that insured, if
> the "occurrence" which caused the "bodily
> injury" or "property damage", or the
> offense which caused the "personal and
> advertising injury", involved the
> rendering of or failure to render any
> professional service.

12.  The Policy contains an exclusion named "Exclusion - Law
Enforcement Activities," Form CG 22 51 07 98, that modifies
the Policy's "Commercial General Liability Coverage". Id.
at 65. The exclusion states:

> The following exclusion is added to
> Paragraph **2.**, **Exclusions of Section I –
> Coverage A – Bodily Injury And Property
> Damage Liability** and Paragraph **2.**,
> **Exclusions** of **Section I – Coverage B-**

> **Personal And Advertising Injury Liability:**
>
> This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of any act or omission resulting from law enforcement activities of your police department or any of your other law enforcement agencies, including their agents or "employees".

13. The Policy contains a section on special conditions, including one named "Municipal Police Liability Exclusion," Manuscript 07/22, that further modifies the Policy. <u>Id.</u> at 73. The exclusion states:

> It is hereby understood and agreed that the activities of Municipal Police, its individual members, and all claims for any and all "occurrences" arising there from; whether for or against them; whether the act, error or omission be legal or illegal, accidental, negligent, willful or otherwise, are excluded from coverage under this Policy-Contract, except "bodily injury" or "property damage" to third parties arising out of the use of:
>
>> A. pedaled one-man bicycles, or
>> B. roller skating, whether inline or otherwise
>> C. firing range only applicable when the activity is taken inside of a building designated for this purpose (not on an open space).
>
> Both (A) and (B) while being used only during preventive patrolling and not in response to any official calls, whether emergency or routine. It is specifically understood that this exception applies only to the use of the aforesaid that

>                    constitutes passive patrolling for the
>                    sole purpose of establishing a police
>                    presence.

## IV.  ANALYSIS

MAPFRE seeks dismissal from the case at bar, claiming that the Policy held by the Municipality expressly excludes the type of damages sought by Plaintiffs. (Docket No. 73). MAPFRE specifically points to three exclusions in the Policy: (i) the  Exclusion – Designated Professional Services, (ii) the Exclusion - Law Enforcement Activities, and (iii) the Municipal Police Liability Exclusion. (Facts ¶¶ 11-13). Plaintiffs argue that ambiguities in the Policy and its exclusions, when construed in their favor, support an interpretation of the Policy that does not exclude their claims. (Docket No. 89).

The Court finds it uncontroverted that Rodríguez's death was an "occurrence" constituting "bodily injury" within the meaning of the Policy. (Facts ¶¶ 4-6, 8). This case is a civil suit seeking damages because of Rodríguez's "bodily injury," and is thus a "suit" as contemplated by the Policy. (Fact ¶ 8). The Court now examines the various exceptions and exclusions raised in the Policy.

First, the Policy section titled "Legal Action Against Us" bars MAPFRE from being brought into a suit  that is "asking for damages from an insured," here, the Municipality. (Fact ¶ 10). Neither party addresses this section in their filings, and the

Court notes that Plaintiffs were never a party to the initial contract between MAPFRE and the Municipality. (Docket Nos. 73; 89; 93 and 103). As Plaintiffs were not parties to the Policy, fundamental contract law indicates that the "Legal Action Against Us" provision cannot be used to block Plaintiffs from bringing the instant suit. *See*, *e.g.*, E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 294 ("It goes without saying that a contract cannot bind a nonparty.").

Second, the Court considers the "Exclusion – Designated Professional Services." (Fact ¶ 11). The provision excludes instances of "bodily injury" "due to the rendering or failure to render any professional service." Id. It further specifies that claims brought against the Municipality that "allege negligence or other wrongdoing in the supervision, hiring, employment, training, or monitoring of others by the insured" are excluded from the Policy if the underlying "'occurrence' which caused the 'bodily injury'" "involved the rendering of or failure to render any professional service." Id. Plaintiffs' *Amended Complaint* shows that MAPFRE is only a party to this suit because it insured the Municipality, and Plaintiffs claim the Municipality failed "to properly train, instruct, supervise, and control" the Officer Defendants, Ramos, and Robles. (Docket Nos. 52 ¶ 8 and 89 at 4). Any failure in training, supervision, or control of these Defendants by the Municipality indisputably falls under the

Civil No. 23-1278 (RAM)                                            17

language of the "Exclusion – Designated Professional Services."
(Fact ¶ 11). The only potential dispute is whether the "occurrence"
leading to the "bodily injury" experienced by Plaintiffs' son
"involved the rendering of or failure to render any professional
service." Id. If so, the exclusion applies and the Policy does not
cover the type of claim brought by Plaintiffs.

Plaintiffs contend that the Policy's failure to define a
"professional service" creates an ambiguity in the Policy that
should be construed in their favor, preventing the exclusion from
applying. (Docket No. 103). However, Plaintiffs wrongly assert
that "[a]ny ambiguity" must be construed in their favor. (Docket
No. 89 at 3). The Court cannot contort "clear, unambiguous
clause[s] that favo[r] the insurer in a manner that would benefit
the insured." Metlife Cap. Corp., 224 F.Supp. 2d at 382. The Court
finds it clear that Plaintiffs' son died during a professional
service carried out by the police. Rodríguez was shot by Ramos and
Robles while the officers were in a police patrol vehicle and
actively pursuing Rodríguez, activities that require professional
training specific to police officers. (Docket No. 52 ¶ 15); *see,
e.g.,* Tyler v. P.R. Convention Ctr. District Auth., 2022 WL
22895635, at *1 (D.P.R. 2022) (looking to the Puerto Rico Supreme
Court's definition of a professional service as "depend[ing] on
whether the person acts by exercising the special training and
acumen typical of a professional"). The alleged failure of Ramos,

Robles, and the other Officer Defendants to summon medical care for Rodríguez arguably forms a "failure to render" a professional service, providing a second reason for this policy exclusion to apply. (Docket No. 52 ¶ 15); (Fact ¶ 11).

Neither party argues that Rodríguez's death occurred outside the context of a professional activity. (Docket Nos. 52, 73; 89; 93 and 103). Plaintiffs misread the Policy, concluding that the Municipality must have engaged in or failed to render a "professional service" for the exclusion to apply. (Docket No. 103). Plaintiffs' interpretation runs counter to a plain reading of the Policy and cannot be adopted by the Court. Any failure by the Municipality in the instant case "to properly train, instruct, supervise, and control" its officers is excluded under the clear language of the "Exclusion – Designated Professional Services" because the underlying occurrence that led to Rodríguez's death "involved the rendering of or failure to render any professional service." (Docket No. 89 at 4); (Fact ¶ 11). The Municipality itself did not need to engage in a professional service for the Policy's exclusion to apply; it is enough that the underlying events of Rodríguez's death involved Municipality employees engaged in such a service.

Third, the Court considers the "Exclusion – Law Enforcement Activities." (Fact ¶ 12). The provision excludes instances of "bodily injury" "arising out of any act or omission resulting from

law enforcement activities" of the Municipality's police
department or any other law enforcement agencies. Id. For the same
reasons discussed in the previous exclusion, the Court concludes
that a plain reading of the Policy excludes the "bodily injury"
suffered by Plaintiffs' son during a police chase and shooting.
See, e.g., Oquendo-Rivera v. Toledo, 736 F.Supp 2d. 434 (D.P.R.
2010) (suit brought over a police shooting carried out in the
defendant officer's course of work).

Plaintiffs contend that the Municipality's alleged actions-
"in vigilando fault and/or negligence in failing to properly train,
instruct, supervise, discipline, and control" Ramos, Robles, and
the Defendant Officers- do not constitute "law enforcement
activities." (Docket No. 89 at 4). However, Plaintiffs misread the
Policy. The plain language of the Policy excludes a claim for
"bodily injury" like that brought by Plaintiffs if it arose from
"any act or omission resulting from law enforcement activities" of
the Municipality police, such as the police chase and subsequent
shooting that led to Rodríguez's death. (Fact ¶ 12). The
Municipality itself is not required to have acted to cause the
harm to Plaintiffs. Id.

Fourth, the Court considers the "Exclusion – Municipal Police
Liability Exclusion." (Fact ¶ 13). Beyond certain enumerated
exceptions unrelated to Plaintiffs' claims, the provision excludes
"activities of the Municipal Police, its individual members, and

all claims for any and all 'occurrences' arising there from,"
regardless of the legality of any error or omission, or whether
such an action is "accidental, negligent, willful, or otherwise."
Id. The broad scope of this exclusion means that Plaintiffs' claims
against MAPFRE must fail, even assuming the previous two exclusions
did not apply. While Plaintiffs assert any ambiguity in "activities
of the Municipal Police" must be construed in their favor, the
Court reads the exclusion to be unambiguous because it is simply
excluding virtually all Municipality police activity from coverage
under the Policy. (Docket No. 89 at 5). The Policy's exclusions
may be broad, but this does not make them ambiguous. Plaintiffs do
not present a persuasive or plausible alternative reading of the
Policy. (Docket Nos. 89 and 103).

     In sum, the Court concludes that the "Exclusion – Designated
Professional Services," "Exclusion – Law Enforcement Activities,"
and "Exclusion – Municipal Police Liability Exclusion"
unambiguously exclude Plaintiffs' claims from coverage. Plaintiffs
have not shown that a trialworthy issue persists such that summary
judgment would be inappropriate, even when given the benefit of
any reasonable inferences. See Robinson, 950 F.3d at 24; Burke
Rozzetti, 439 F.Supp. 3d at 18. While the Court is sympathetic to
Plaintiffs' loss, their disagreement about the proper
interpretation of a policy provision does not make the Policy
ambiguous nor create a "genuine dispute as to any material fact."

Fed. R. Civ. P. 56(a). *See* <u>Hoffman García</u>, 246 F.Supp. 3d at 530. The Policy's plain language clearly shows that MAPFRE does not provide coverage to the Municipality for claims such as those brought by Plaintiffs. As a result, there is no reason for MAPFRE to continue as a party to the case at bar.

### V.    CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendant's *Motion for Partial Dismissal and/or Summary Judgment* at Docket No. 73. Plaintiffs' claims against Defendant MAPFRE Praico Insurance Company are **DISMISSED.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of January 2025.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge
